MARVIN, Judge.
In this case between the owner and a contractor arising out of disputed verbal agreements for the construction of an addition to a residence, the defendant contractor appeals from a judgment which can- *723 celled his labor lien and rejected his demands for $4,535.82 labor costs. We reverse.
The owner contends that defendant first agreed to construct the addition for $14,000 and that this contract was increased after construction began to $16,000. The contractor contends that the first contract was on the basis that he would be paid for the labor and the material which were necessary to complete the job and that the second contract was on the basis that the owner would pay for materials himself and would pay the labor costs to the contractor.
The addition contemplated by the owner was a finished garage and a den. No specifications were drawn other than a floor plan sketch. About three weeks after construction began a description of materials was furnished by the contractor to the lending institution providing permanent financing, but this too, is extremely broad and non-specific and does not itself constitute a contract.
Some seven weeks after construction began a dispute arose about the nature and the cost of the construction. The owner ordered the contractor off the job and unsuccessfully sought to contract with others. Eventually, the owner requested terms on which the contractor would return and finish the job. The contractor returned to work. From this time until the contractor worked no more, the record is clear that the owner paid for all materials and the contractor was keeping time and was being paid, at least in part, by the owner for the labor performed by him and his workmen on the job.
The lower court found that turnkey contracts (for a fixed price) had been made by the litigants. Even should we accept this finding by the lower court, such a contract, lacking in specificity as this one is, affords little relief to the homeowner. The nature of the support of the two-story addition, for instance, is not specified. The contractor originally installed one or more posts to provide support. The owner would not accept a post support for the structure and desired a change. The post supports were removed and the construction was altered to accommodate one or more steel beams.
Other examples of changes in work once begun or finished exist in the record. In all these instances, however we have not one shred of evidence as to what the first or the second agreement was on these questions. What was or what was not contemplated by the litigants as to the details in and the type of construction is glaringly absent from this record.
The owner claimed below that he had spent some $2,600 over and above the alleged $16,000 price to complete the addition. Some of the owner’s expenditures were admittedly not included in the alleged original contract. The contractor claimed below and here that after he resumed work he is owed $4,535.82 for labor for which he has not been paid.
When the first dispute arose and the contractor quit the job the owner paid the contractor $3,651.70 by his check of November 15, 1976. This figure derives from an invoice covering the cost of all labor and material from August 2, the beginning of construction, through September 24, 1976. The invoice shows materials at $1,460.96 and labor, workmen’s compensation, unemployment insurance and social security taxes at $2,190. The owner denied receiving an invoice but admits paying the amount of the invoice before the contractor returned to work about February 1, 1977. The contractor then worked through April 15,1977.
After the contractor returned to work the owner began paying the bills for materials direct to suppliers and began paying directly laborers, other than the contractor and his workmen. The owner also paid the contractor $2,000 on two occasions between February 1 and April 15, 1977, for the contractor’s labor and related costs. During this time and before April 15, 1977, the owner paid eight bills to materialmen totaling more than $6,500.
When an agreement lacks specificity and the intent of the parties is doubtful, the manner in which the agreement has been executed by both parties furnishes a *724 rule for interpreting the agreement. C.C. Art. 1956. Thus whatever label is put on this agreement which is lacking in specifics, the actions of both parties after the contractor first quit the job in September, 1976 show that the owner obligated himself to pay the contractor’s labor costs on the second contract as they accrued. We therefore must reverse the lower court on this point.
Accordingly,
IT IS ORDERED AND ADJUDGED:
That there be judgment in favor of E. L. Meredith, Jr. and against Fred Ford for $4,535.82 with legal interest from date of judicial demand;
That E. L. Meredith’s lien and privilege, dated May 27, 1977, recorded under Register No. 234821 in Book 89, Page 145 of the Mortgage Records of Jackson Parish, Louisiana, be recognized as valid and enforceable.
IT IS FURTHER ORDERED that Fred Ford pay all costs of these proceedings here and below.
REVERSED AND RENDERED.